1   Laurence A. Weiss (Bar No. 164638)
        Laurence.Weiss@hellerehrman.com
2   HELLER EHRMAN LLP
    275 Middlefield Road
3   Menlo Park, CA  94025-3506
    Telephone:     650.324.7000
4   Facsimile:     650.324.0638

5   David B. Weinberg (D.C. Bar # 186247)
    (Pending *pro hac vice*)
6      dweinberg@wileyrein.com
    Eric Andreas (D.C. Bar # 462777)
7      eandreas@wileyrein.com
    David E. Markert (D.C. Bar #502486)
8      dmarkert@wileyrein.com
    WILEY REIN LLP
9   1776 K Street NW
    Washington, DC  20006
10  Telephone:     202.719.7000
    Facsimile:     202.719.7049

11
    Attorneys for Intervenor-Defendant
12  Makhteshim Agan of North America, Inc.

13
                    **UNITED STATES DISTRICT COURT**
14          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
                       **SAN FRANCISCO DIVISION**
15

16  PESTICIDE ACTION NETWORK          )
    NORTH AMERICA, et al.,            )   Case No. C 08-03542 VRW
17                                    )
                                      )
18                  Plaintiffs,       )   **NOTICE OF MOTION, MOTION TO**
                                      )   **INTERVENE, AND MEMORANDUM**
19                                    )   **OF POINTS AND AUTHORITIES IN**
        v.                            )   **SUPPORT OF MOTION**
20                                    )
                                      )
21  UNITED STATES ENVIRONMENTAL       )   Date: Thursday, December 4, 2008
    PROTECTION AGENCY,                )   Time: 2:30 PM
22                                    )   Courtroom 6, 17th Floor
                                      )
23                  Defendant.        )   The Honorable Vaughn R. Walker
    _____   )
24

25

26

27

28

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
C 08-03542 VRW

1

# TABLE OF CONTENTS

2

3    TABLE OF AUTHORITIES ............................................................................................. i

4    NOTICE TO PLAINTIFFS, DEFENDANT, AND THEIR ATTORNEYS OF RECORD........... iii

5    POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE...........................1

6    I.    STATEMENT OF THE ISSUES ...............................................................................1

7    II.   RELEVANT FACTS .................................................................................................2

8          A.    Endosulfan .....................................................................................................2

9          B.    Statutory Background And Regulatory Scheme............................................3

10               1.    FIFRA .................................................................................................3

11               2.    The ESA..............................................................................................4

12         C.    Plaintiffs' Action ..........................................................................................5

13         D.    MANA ...........................................................................................................5

14   III.  ARGUMENT .............................................................................................................6

15         A.    Intervention As Of Right Should Be Granted ...............................................6

16               1.    This Motion To Intervene Is Timely ..................................................6

17               2.    MANA Has Significantly Protectable Interests In This Case .................7

18               3.    Disposition Of This Case May Affect MANA's Interests.......................9

19               4.    The Existing Parties Do Not Adequately Represent MANA's Interests.................9

20         B.    Permissive Intervention Should Be Granted ................................................11

21   IV.   CONCLUSION..........................................................................................................12

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## CASES

3

Cemex, Inc. v. County of Los Angeles,
    92 F. A'ppx 457 (9th Cir. 2004) ..................................................................6

4

Dimond v. District of Columbia,
    792 F.2d 179 (D.C. Cir. 1986) ...................................................................10

5

6

Forest Conservation Council v. United States Forest Service,
    66 F.3d 1489 (9th Cir. 1995) ...............................................................7, 10

7

Fund for Animals v. Norton,
    322 F.3d 728 (D.C. Cir. 2003) ...................................................................10

8

9

Kootenai Tribe of Idaho v. Veneman,
    313 F.3d 1094 (9th Cir. 2002) .............................................................11, 12

10

Nader v. Ray,
    363 F. Supp. 946 (D.D.C. 1973) ..................................................................8

11

12

National Association of Home Builders v. Defenders of Wildlife,
    127 S. Ct. 2518 (2007) .................................................................................4

13

Natural Resources Defense Council v. Costle,
    561 F.2d 904 (D.C. Cir. 1977) ...................................................................10

14

Natural Resources Defense Council v. EPA,
    99 F.R.D. 607 (D.D.C. 1983) ...............................................................8, 10

15

16

Northwest Forest Resource Council v. Glickman,
    82 F.3d 825 (9th Cir. 1996) .........................................................................8

17

People for the Ethical Treatment of Animals v. Babbitt,
    151 F.R.D. 6 (D.D.C. 1993) .........................................................................8

18

19

Sierra Club v. EPA,
    995 F.2d 1478 (9th Cir. 1993) ..................................................................7, 8

20

Sierra Club v. Espy,
    18 F.3d 1202 (5th Cir. 1994) .......................................................................7

21

22

Southwest Center for Biological Diversity v. Berg,
    268 F.3d 810 (9th Cir. 2001) ...................................................................6, 9

23

Trbovich v. United Mine Workers of America,
    404 U.S. 528 (1972) .....................................................................................9

24

25

United States v. Alisal Water Corp.,
    370 F.3d 915 (9th Cir. 2004) .......................................................................7

26

United States v. Oregon,
    745 F.2d 550 (9th Cir. 1984) .......................................................................7

27

28

1

## ADMINISTRATIVE & EXECUTIVE MATERIALS

2

69 Fed. Reg. 26819 (May 14, 2004) ..................................................................3

3

## RULES & REGULATIONS

4

40 C.F.R. § 152.50(b)(3) ............................................................................ iii

5

6

## FEDERAL STATUTES

7

5 U.S.C. § 551 ........................................................................................8

8

7 U.S.C. §§ 136-136y .............................................................................. iii

9

7 U.S.C. § 136 ........................................................................................3

10

7 U.S.C. § 136a ......................................................................................3

11

7 U.S.C. § 136a-1 ..................................................................................1, 3

12

7 U.S.C. § 136d .......................................................................................2

13

16 U.S.C. §§ 1531-44 ...............................................................................4

14

16 U.S.C. § 1533 .....................................................................................4

15

16 U.S.C. § 1536 ...................................................................................1, 4

16

17

## MISCELLANEOUS

18

Charles Alan Wright & Arthur R. Miller,
    FEDERAL PRACTICE AND PROCEDURE § 1916 (1972)......................................7

19

Fed. R. Civ. P. 24(a) ....................................................................... iii, 6, 7, 11

20

Fed. R. Civ. P. 24(b) ....................................................................... iii, 11

21

22

23

24

25

26

27

28

1  **NOTICE TO PLAINTIFFS, DEFENDANT, AND THEIR ATTORNEYS OF RECORD**

2      **PLEASE TAKE NOTICE** that on Thursday, December 4, 2008, at 2:30 PM, or as soon

3  thereafter as the matter may be heard, in Courtroom 6 of the United States Courthouse located at

4  450 Golden Gate Avenue, 17th Floor, San Francisco, California, Applicant Makhteshim Agan of

5  North America, Inc. ("MANA") will and does hereby move the Court to grant it intervention

6  under Rules 24(a)(2) and 24(b)(2) of the Federal Rules of Civil Procedure.

7      By this motion, MANA seeks an Order from this Court granting it intervention as a

8  defendant in this case.  MANA has an absolute right to intervene as a defendant because it has

9  substantial interests in endosulfan, the pesticide that is the subject of this case, and those interests

10 are not adequately represented by the existing parties.  MANA holds EPA registrations pursuant

11 to the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. §§ 136-136y ("FIFRA") for

12 several agricultural products that are formulated with endosulfan and is the authorized agent

13 under FIFRA for Makhteshim Chemical Works, Ltd., the primary manufacturer of technical-

14 grade endosulfan in the United States.  *See* 40 C.F.R. § 152.50(b)(3).  Thus, MANA would be

15 directly and adversely affected by a ruling in the Plaintiffs' favor that the Defendant, the United

16 States Environmental Protection Agency, violated FIFRA and the Endangered Species Act in

17 determining that endosulfan was eligible for reregistration.  For these same reasons, MANA also

18 has a permissive right to intervene in this case.

19      On August 19, 2008, Counsel for Plaintiffs informed MANA that Plaintiffs do not oppose

20 this motion, but declined MANA's request to stipulate to the motion being granted.  Also on

21 August 19, 2008, Counsel for Defendant informed MANA that EPA does not oppose this motion,

22 but declined MANA's request to stipulate to the motion being granted.

23

24

25

26

27

28

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
C 08-03542 VRW    - iii -

1

2
DATED:    August 20, 2008                    HELLER EHRMAN LLP

3
                                                        By:_____/s/_____
4
David B. Weinberg (D.C. Bar # 186247)            Laurence A. Weiss
(Pending *pro hac vice*)                                    Laurence.Weiss@hellerehrman.com
5
    dweinberg@wileyrein.com                       HELLER EHRMAN LLP
Eric Andreas (D.C. Bar # 462777)                 275 Middlefield Road
6
    eandreas@wileyrein.com                         Menlo Park, CA  94025-3506
David E. Markert (D.C. Bar #502486)              Telephone:    650.324.7000
7
    dmarkert@wileyrein.com                          Facsimile:    650.324.0638
WILEY REIN LLP
8
1776 K Street NW
Washington, DC  20006
9
Telephone:    202.719.7000
Facsimile:    202.719.7049

10

11
                            Attorneys for Intervenor-Defendant
                        Makhteshim Agan of North America, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
C 08-03542 VRW    - iv -

1

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE**

2

3      **I.      STATEMENT OF THE ISSUES**

4              The present action arises from the United States Environmental Protection Agency's

5      ("EPA" or "the Agency") decision to continue to allow the reregistration of certain uses of the

6      pesticide endosulfan.  EPA's decision was made as part of a Reregistration Eligibility Decision

7      ("RED") for endosulfan that was issued by EPA on July 31, 2002.[1]  REDs are the end result of a

8      lengthy reregistration process that EPA is required to undertake for all pesticides first registered

9      before November 1, 1984.  *See* Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA")

10     § 4, 7 U.S.C. § 136a-1.

11             EPA concluded in the RED for endosulfan that there was sufficient information on the

12     human health and ecological effects of endosulfan to support the continued use in agricultural

13     settings of endosulfan-containing products.  Although the Agency did identify some occupational

14     and ecological risks from the agricultural use of endosulfan, it found that these risks could be

15     controlled through the implementation of mitigation measures and labeling changes.  Also, EPA

16     identified in the RED additional studies of endosulfan's risks to human health and the

17     environment that it required be conducted by the pesticide's registered manufacturers.

18             Plaintiffs here ask the Court to declare that EPA acted arbitrarily, capriciously, and in

19     violation of FIFRA when it approved reregistration of endosulfan for continued use in agricultural

20     applications.  Plaintiffs also ask the Court to issue an injunction that orders EPA to make a new

21     reregistration eligibility decision for endosulfan and to impose protective measures until a new

22     reregistration eligibility decision is issued.  Plaintiffs also ask the Court to declare that the

23     Agency violated Section 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2),

24     by reregistering endosulfan without first consulting the United States Fish and Wildlife Service

25     ("FWS") and the National Marine Fisheries Service ("NMFS") (collectively "the Services").

26     Plaintiffs thus seek an order that compels EPA to consult with the Services on the effects of

27     _____

28     [1]       The endosulfan RED is available on EPA's website.  *See* EPA, Pesticide Reregistration Status,
        http://www.epa.gov/pesticides/reregistration/status_page_e.htm (last visited Aug. 7, 2008).

1    endosulfan and imposes interim protective measures until such consultations are complete.

2           Resolution of the Plaintiffs' claims will have a direct, immediate, and substantial impact

3    on the ability of Makhteshim Agan of North America, Inc. ("MANA") to market and sell its

4    endosulfan products and on its investment in studies currently being performed for purposes of

5    complying with the endosulfan RED.  Furthermore, if this Court were to require EPA to make a

6    new reregistration eligibility decision for endosulfan, MANA would be obliged to participate in

7    that proceeding, and the end result could be either more burdensome restrictions on the uses of

8    MANA's endosulfan-containing products or the initiation of proceedings to suspend or cancel

9    those uses.  *See* FIFRA § 6, 7 U.S.C. § 136d.  Either of these outcomes would have a significant

10   and adverse impact on the future sales of MANA's endosulfan-containing products.

11          Thus, MANA requests that the Court determine that it may intervene in this action, either

12   as of right or permissively, so that MANA may defend its endosulfan registrations.

13   **II.      RELEVANT FACTS**

14          **A.      Endosulfan**

15          Endosulfan is a broad spectrum contact insecticide and acaricide that was first registered

16   for use in the United States in 1954.  Until relatively recently, endosulfan was a widely used

17   pesticide in the United States.  However, during the reregistration process the endosulfan

18   registrants agreed to voluntarily cancel their registrations for residential uses of endosulfan-

19   containing products, which constituted the majority of all registered uses.  Now, endosulfan is

20   registered for use only in agricultural settings.  Consequently, the amount of endosulfan used in

21   the past few years has dropped considerably.

22          Due to the historic widespread use of endosulfan, its health and safety risks have been

23   extensively examined and re-examined by numerous governmental regulatory bodies, including

24   EPA.  Millions of dollars have been spent in the past five decades on studies of the potential

25   impact of endosulfan-containing products on human health and the environment.  These studies

26   have repeatedly shown that endosulfan is an extremely effective pesticide, the continued use of

27   which presents readily manageable risks.

28

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
C 08-03542 VRW    - 2 -

1        **B.        Statutory Background And Regulatory Scheme**

2            **1.        FIFRA**

3        EPA regulates the distribution and sale of pesticide products pursuant to the authorities set

4    forth in FIFRA.  Under FIFRA, a company may lawfully distribute or sell only those pesticide

5    products that have been "registered" for specific uses by EPA.  7 U.S.C. § 136a(a).  For a

6    pesticide to be registered, the EPA Administrator must determine, among other things, that it

7    "will perform its intended function without unreasonable adverse effects on the environment." *Id.*

8    § 136a(c)(5)(C).

9        In 1988, Congress amended FIFRA to require the reregistration by EPA of all products

10    containing active ingredients that had been registered prior to November 1, 1984.  *Id.* § 136a-1(a).

11    Those amendments established a five-phase process.  *Id.* § 136a-1(b).  In Phase One, the Agency

12    was to determine and list which pesticides are to be reregistered.  Phase Two required EPA to

13    identify the missing or inadequate data supporting those registrations.  During Phase Three, the

14    registrants of the listed pesticides were required to submit summaries of existing studies, flag

15    studies indicating adverse effects, and commit to submit additional data as needed.  EPA

16    reviewed these submissions in Phase Four and required registrants to meet any unfulfilled data

17    requirements.  Last, in Phase Five, EPA performed a detailed review of all data submitted for

18    each pesticide and determined whether that pesticide could be used without unreasonable adverse

19    effects on people or the environment, taking into account the costs and benefits of the pesticide's

20    uses.  *See id.* §§ 136(bb), 136a(c)(5)(C), 136a-1(g)(2)(C).

21        The reregistration process provides extensive opportunities for public participation.  EPA

22    procedures are designed to promote robust public involvement while making timely pesticide

23    regulatory decisions.  *See* 69 Fed. Reg. 26819 (May 14, 2004).  As it has implemented this

24    reregistration program, EPA has documented its evaluations in interim reregistration eligibility

25    decisions ("IREDs") or REDs.  In either case, when the Agency releases a reregistration decision

26    it typically accepts public comment on that document.  Pesticides that are determined by EPA to

27    meet current scientific and regulatory standards as a result of its review of old data and newly

28    submitted data may be declared "eligible" for reregistration.  Many, if not most, reregistration

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
C 08-03542 VRW    - 3 -

1    eligibility decisions are conditioned on the implementation of risk reduction requirements such as

2    application restrictions or use of additional personal protective equipment.

3         As noted above, the RED for endosulfan was issued in 2002.  In the RED, EPA

4    determined that endosulfan was eligible for reregistration for agricultural uses provided

5    mitigation measures and labeling changes were implemented.[2]  EPA also required the registrants

6    to conduct several additional studies of endosulfan's effects on human health and the

7    environment.

8                    **2.    The ESA**

9         The ESA, 16 U.S.C. §§ 1531-44, was enacted in 1973 and has been amended on several

10   occasions.  Its goal is to protect and conserve endangered and threatened species.  *Nat'l Ass'n of*

11   *Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2528 (2007).  The Act protects

12   endangered and threatened species that have been listed ("listed species") pursuant to the

13   rulemaking process described in Section 4 of the ESA.  16 U.S.C. § 1533.  As relevant here, the

14   ESA requires federal agencies to consult with the Services to ensure that a proposed action will

15   not jeopardize the continued existence of a listed species.  Specifically, Section 7(a)(2) of the

16   ESA provides:

17            Each Federal agency shall, in consultation with and with the assistance of the
             Secretary, insure that any action authorized, funded, or carried out by such agency
18            . . . is not likely to jeopardize the continued existence of any . . . [listed] species or
             result in the destruction or adverse modification of [designated critical] habitat of
19            such species.

20   16 U.S.C. § 1536(a)(2).

21        EPA consulted with the Services in 1989 on the potential effects on listed species of the

22   continued use of endosulfan.  RED at 33.  The Agency also is presently engaged in a Proactive

23   Conservation Review with the Services under Section 7(a)(1) of the ESA, 16 U.S.C. § 1536(a)(1),

24   and has stated that it would "reassess the potential effects of endosulfan use to [listed species] . . .

25   [and would re]consider any regulatory changes recommended in the RED" upon completion of

26   _____

27   [2]       Prior to the issuance of the endosulfan RED, the technical registrants voluntarily amended technical product labels to remove all residential use patterns and further agreed to restrict the annual maximum use rate for all uses to 3 lbs. active ingredient per acre.  The RED for endosulfan, therefore, does not analyze the risks for the residential

28   uses that were removed from the pesticide's label.

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
C 08-03542 VRW    - 4 -

1  that review.  RED at 33.  Until then, it is EPA's intent that the risk mitigation measures specified

2  in the RED serve as "interim protection measures."  *Id*. at 34.

3    **C.    Plaintiffs' Action**

4      Plaintiffs' complaint, filed on July 24, 2008, seeks judicial review of EPA's decision to

5  reregister endosulfan.  Specifically, the Plaintiffs' challenge is based on the following assertions:

6      In Count I of the complaint, the Plaintiffs allege that the decision to reregister endosulfan

7  was arbitrary, capricious, and contrary to FIFRA because "EPA failed to conduct a complete

8  assessment of the risks and benefits of endosulfan."  Compl. at ¶ 40.

9      Count II of the complaint alleges that, notwithstanding the Agency's failure to conduct a

10  complete assessment of the risks and benefits of endosulfan, the decision to reregister endosulfan

11  was arbitrary, capricious, and contrary to FIFRA because EPA proffered no rationale for how

12  endosulfan's benefits outweigh its risks.  Compl. at ¶¶ 42-43.

13      Count III alleges that EPA violated the ESA by reregistering endosulfan without

14  completing the consultations with the Services required by Section 7(a)(2) of the ESA.  Compl. at

15  ¶ 46.

16      In the Prayer for Relief, the Plaintiffs seek, *inter alia*: (i) a declaratory judgment that EPA

17  violated FIFRA and the ESA in reregistering endosulfan; (ii) an order requiring EPA to make a

18  new reregistration decision that is based on a determination as to whether the benefits of the

19  remaining endosulfan uses outweigh the risks and also on a consultation with the Services

20  pursuant to Section 7(a)(2) of the ESA; and (iii) interim protective measures.

21    **D.    MANA**

22      MANA is an affiliate of Makhteshim Chemical Works, Ltd. ("MCW"), which is today the

23  world's primary manufacturer of technical-grade endosulfan for pesticide products.  Declaration

24  of Mr. Ephraim Gur ("Gur Decl.") ¶¶ 1, 4 (attached as Ex. 1).  MANA acts as MCW's agent

25  before EPA on all endosulfan-related matters and also coordinates the domestic distribution and

26  sale of MCW's technical-grade endosulfan.  *Id*. ¶ 1.  MANA also produces and sells technical

27  endosulfan and several end-use products containing endosulfan for which it holds registrations.

28  *Id*. ¶ 5.  These products are used by farmers in the United States to defend against a variety of

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM

1    insect and mite pests of field, fruit, and vegetable crops.  *Id.* ¶ 3.

2          MANA has been an active participant in the endosulfan reregistration process.  In the past

3    ten years, MANA and MCW have invested millions of dollars in research and testing to support

4    endosulfan's continued registration, and they continually update that research with data generated

5    using the newest testing technologies.  *Id.* ¶ 7.  MANA also operates a product stewardship

6    program that supports and advises customers on application techniques that minimize risks to

7    people or the environment from endosulfan.  *Id.* ¶ 8.

8          MANA has strong interests in the property and transactions that are the subject of this

9    case.  Those interests include MANA's registrations for endosulfan, from which it derives

10   economic benefits.  Moreover, as the owner of numerous other pesticide registrations that may be

11   affected by the decision in this case, MANA also has an interest in defending the reregistration

12   process itself against the Plaintiffs' attacks.

13   **III.    ARGUMENT**

14          **A.    Intervention As Of Right Should Be Granted**

15          Under Federal Rule of Civil Procedure 24(a)(2), a third party is entitled to intervene as of

16   right in a case if four conditions are met:  (1) the motion for intervention is timely; (2) the third

17   party claims an identifiable, "significantly protectable interest" relating to the property or

18   transaction that is the subject of the action; (3) disposition of the action may impair or impede the

19   third party's ability to protect that interest; and (4) the existing parties to the action may

20   inadequately represent the third party's interest.  *Sw. Ctr. for Biological Diversity v. Berg*, 268

21   F.3d 810, 817 (9th Cir. 2001).  This four-part test is to be construed "liberally in favor of

22   applicants for intervention."  *Cemex, Inc. v. County of Los Angeles*, 92 F. A'ppx 457, 459 (9th

23   Cir. 2004); *see also Berg*, 268 F.3d at 818.  MANA readily satisfies all four conditions and

24   should be granted intervention as of right in this case.

25          **1.    This Motion To Intervene Is Timely**

26          In determining whether a motion is timely, District Courts in the Ninth Circuit are to look

27   to the following three factors:  "(1) the stage of the proceeding at which an applicant seeks to

28   intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
C 08-03542 VRW    - 6 -

1     *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). Of the three factors, the

2     issue of prejudice to the original parties is generally considered the most important. *See United*

3     *States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (quoting Charles Alan Wright & Arthur R.

4     Miller, FEDERAL PRACTICE AND PROCEDURE § 1916 (1972)); *see also Sierra Club v. Espy*, 18

5     F.3d 1202, 1205 (5th Cir. 1994) ("The requirement of timeliness is not a tool of retribution to

6     punish the tardy would-be intervenor, but rather a guard against prejudicing the original

7     parties.").

8         The instant case is at a very early stage of litigation. The Plaintiffs filed their complaint

9     on July 24, 2008. EPA has yet to file an answer in response. In addition, the first Case

10    Management Conference is not scheduled until November 6, 2008, more than two months after

11    the date of this motion. Thus, the submission of this motion to intervene is timely.

12        Moreover, under these circumstances, neither the Plaintiffs nor EPA will be prejudiced by

13    the timing of MANA's motion to intervene. *See Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th

14    Cir. 1993) (intervention timely when motion made at outset of litigation). Thus, the first

15    condition for intervention as of right is met.

16              **2.**      **MANA Has Significantly Protectable Interests In This Case**

17        The second condition for intervention as of right is that the proposed intervenor claim a

18    significantly protectable interest relating to the property or subject of the action. A proposed

19    intervenor claims a significantly protectable interest within the meaning of Rule 24(a)(2) if the

20    interest asserted is protected by law and related to the plaintiff's claims. *Alisal Water Corp.*, 370

21    F.3d at 919. An economic interest may support intervention as of right, if it is concrete and

22    related to the underlying subject matter of the case. *See id.* at 919; *see also Forest Conservation*

23    *Council v. United States Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995) (stating that the interest

24    requirement assists in "dispos[ing] of lawsuits by involving as many apparently concerned

25    persons as is compatible with efficiency and due process").

26        This condition is satisfied here. MANA holds EPA registrations that allow it to distribute

27    and sell endosulfan products in the United States. Gur Decl. ¶¶ 1, 4. Under the Administrative

28    Procedure Act, MANA's registrations are considered licenses that are protected by law. 5 U.S.C.

1  § 551(8) ("license" includes "the whole or a part of an agency permit, certificate, approval,

2  registration . . . or other form of permission").  As such, MANA's registrations qualify as a

3  significantly protectable property interest for purposes of determining its right to intervene in this

4  action.  *See*, *Natural Res. Def. Council v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) ("Plaintiffs'

5  complaint challenges procedures pursuant to which EPA reached preliminary decisions that the

6  intervenors' pesticide products merited continued registration.  If plaintiffs succeed in this case,

7  these regulatory decisions . . . will be set aside.  Thus, the intervenors can be said to have a

8  substantial and direct interest in the subject of this litigation."); *cf. Sierra Club v. EPA*, 995 F.2d

9  1478, 1485-86 (9th Cir. 1993) (ruling that holder of discharge permits under the Clean Water Act

10  had a "protectable" interest and could intervene as of right where the litigation could result in

11  modifications to those permits); *Nader v. Ray*, 363 F. Supp. 946, 953 (D.D.C. 1973) (granting

12  intervention as of right to holders of nuclear facility operating licenses issued by the Atomic

13  Energy Commission where the licenses would have been revoked or suspended if the plaintiffs

14  prevailed).

15      MANA also has a further economic interest in this case that supports granting it

16  intervention as of right.  MANA enjoys economic benefits as one of only a handful of companies

17  that hold registrations to distribute and sell technical and end-use products containing endosulfan

18  for the agricultural market.  Gur Decl. ¶ 5.  If the Plaintiffs prevail in this case, those economic

19  benefits could be lessened or even eliminated.  Gur Decl. ¶¶ 13-14.  This interest, which is

20  directly related to the subject of this action, is clearly sufficient to support intervention as of right.

21  *See, e.g.*, *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993).

22      Third, MANA participated actively in the five-phase reregistration process that

23  culminated in the endosulfan RED.  Gur Decl. ¶ 10.  The Ninth Circuit has frequently approved

24  intervention by entities that were "directly involved in the enactment of the law or in the

25  administrative proceedings out of which the litigation arose."  *Nw. Forest Res. Council v.*

26  *Glickman*, 82 F.3d 825, 837-38 (9th Cir. 1996).  The rationale for this practice is that these

27  entities acquire a significantly protectable interest through their extensive involvement in the

28  regulatory process.  This rationale extends to MANA, and the second criteria for intervention as

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
C 08-03542 VRW    - 8 -

1    of right thus is met.

2            **3.**      **Disposition Of This Case May Affect MANA's Interests**

3        It is unquestionable that disposition of this action may, as a practical matter, impair or

4    impede MANA's ability to protect its interests in endosulfan.  If the Plaintiffs obtain the re-

5    review of the endosulfan RED that they seek, substantial burdens would be placed on MANA.

6    Gur Decl. ¶ 13.  Uncertainty about the future availability of endosulfan products likely will lead

7    potential customers to switch to substitutes.  *Id.*  MANA also would be forced to incur additional

8    cost to defend the continued registration of endosulfan.  *Id.*

9        Furthermore, the end result of EPA's re-review of the RED could be the imposition of

10    additional restrictions on the distribution or use of endosulfan-containing products, or even a total

11    ban on the sale of such products.  *Id.* ¶ 14.  Needless to say, either result would impair the value

12    of MANA's registrations, cause substantial sales losses, and destroy the value of much of its

13    investment in the studies that enabled MANA to obtain and maintain its registrations.  *Id.*

14    Alternatively, EPA could reregister endosulfan on the condition that MANA conduct even more

15    studies on the pesticide's safety.  *Id.*  Depending on the number and types of studies EPA

16    required, the cost of meeting such a condition on reregistration may be so great that MANA

17    would have no choice but to cancel or narrow its registrations.  *Id.*

18        In short, the disposition of this action will "as a practical matter impair or impede"

19    MANA's ability to protect its interests in endosulfan.  Therefore, the third element of the Ninth

20    Circuit's four-part test for intervention as of right is satisfied.

21            **4.**      **The Existing Parties Do Not Adequately Represent MANA's Interests**

22        The final condition for intervention as of right is that the representation of a proposed

23    intervenor's interests by the existing parties "may be" inadequate.  The Supreme Court has stated

24    that the burden of making a showing of inadequacy should be treated as "minimal."  *Trbovich v.*

25    *United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Sw. Ctr. for Biological*

26    *Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001).

27        The courts have recognized that governmental representation of the interests of private

28    parties is often inadequate.  Governmental agencies have a broad responsibility to represent the

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
C 08-03542 VRW    - 9 -

1    public interest, whereas private companies often have a more narrow and "parochial" financial

2    interest not shared by the public at large.  *See, e.g.*, *Forest Conservation Council v. United States*

3    *Forest Serv.*, 66 F.3d 1489, 1498-99 (9th Cir. 1995); *Fund for Animals v. Norton*, 322 F.3d 728,

4    736 (D.C. Cir. 2003).

5         Moreover, MANA routinely conducts research on the pesticides it registers and

6    manufactures and thus has special expertise that makes it uniquely able to both defend

7    endosulfan's safety and accurately delineate the pesticide's likely effects on human health and the

8    environment.  Gur Decl. ¶ 11.  Furthermore, MANA has experience and knowledge in the

9    complex business of supplying endosulfan products that EPA does not have.  *Id.* ¶ 1; *see Natural*

10   *Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977).  MANA thus "can reasonably

11   be expected to contribute to the informed resolutions of these [technical and complex] questions

12   when, and if, they arise before the District Court," and its participation in defense of the

13   endosulfan RED will "serve as a vigorous and helpful supplement to EPA's defense."  *Costle*,

14   561 F.2d at 912-13.

15        In addition, while MANA supports the endosulfan RED, its interest in endosulfan is

16   different from that of EPA, and thus could lead MANA to take different positions from the

17   Agency in litigation.  MANA has focused financial interests in defending the endosulfan RED.  In

18   contrast, EPA would face a potential conflict of interest were it to represent both the general

19   interests of U.S. citizens and the financial interests of MANA.  The courts have found this

20   potential for conflict sufficient to meet the "minimal" burden of demonstrating inadequacy of

21   representation.  *See, e.g.*, *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d

22   1489, 1499 (9th Cir. 1995) (finding proposed intervenors satisfied the minimal showing required

23   for inadequacy of representation because, in part, "the government must present the broad public

24   interest, not just the economic concerns of the [proposed intervenors]"); *Dimond v. District of*

25   *Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986).

26        Indeed, in the particular context of pesticides regulation, the inadequacy standard is met

27   even in cases where EPA and pesticide manufacturers appear to have interests that are directly

28   aligned.  *See Natural Res. Def. Council v. EPA*, 99 F.R.D. 607, 610 (D.D.C. 1983) (concerning

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
C 08-03542 VRW    - 10 -

1    regulatory reform measures for pesticides).  This is because EPA's broader goal in challenges to

2    its pesticides regulations is "defending [the] policies and procedures that it utilizes in regulating

3    many potential harmful substances . . . ," while the manufacturer would have "interests [that] are

4    more narrowly focused on proceedings relating to the particular pesticide [it] manufacture[s]" and

5    thus will wish to maximize its opportunities to prove that its products are safe.  *Id.*  Furthermore,

6    a time may come in this action when the interests of EPA and MANA diverge, and any purported

7    EPA representation of MANA's interests would become inadequate.  *See id.*  For example, EPA

8    may desire to reach a settlement with the Plaintiffs that would severely restrict endosulfan's uses

9    or even phase the pesticide out.  MANA may not share the same goals.

10        For the foregoing reasons, MANA cannot rely on EPA to adequately protect its interests.

11    Therefore, the fourth criterion for intervention as of right is met, and this Court should grant

12    MANA's motion.

13        **B.    Permissive Intervention Should Be Granted**

14        Alternatively, MANA should be granted permissive intervention.  Federal Rule of Civil

15    Procedure 24(b)(2) sets forth the standard that governs permissive intervention.  Under Rule

16    24(b)(2), a third party seeking to intervene permissively must show:  (1) that its application is

17    timely and (2) that its claim or defense and the main action have a question of law or fact in

18    common.  The Rule differs from Rule 24(a)(2) in that a "significant protectable interest" is not

19    required for permissive intervention, nor is there a requirement that the proposed intervenor have

20    a "direct personal or pecuniary interest" in the case.  *See Kootenai Tribe of Idaho v. Veneman*,

21    313 F.3d 1094, 1108 (9th Cir. 2002) (concerning attempt to intervene in two actions challenging

22    United States Forest Service's roadless area conservation rule).

23        MANA's application for intervention meets Rule 24(b)(2)'s standard.  As explained

24    above, MANA's motion to intervene is timely and will not result in any prejudice to the existing

25    parties.  Moreover, MANA is obviously affected by litigation that could result in significant

26    changes to, or cancellation of, pesticide registrations that it holds.  Also, as is clear from MANA's

27    proposed answer, MANA raises many questions of law and fact in its defense that also are

28    material to the main action.

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
C 08-03542 VRW    - 11 -

1    In *Kootenai Tribe*, the Ninth Circuit held that private environmental groups lacked the

2    significant protectable interest necessary to intervene as of right.  *Id.* at 1108.  However, the Court

3    affirmed the district court's grant of permissive intervention, agreeing that "the magnitude of

4    [the] case is such that both Applicants' intervention will contribute to the equitable resolution of

5    [the] case."  *Id.* at 1111.  This case also concerns issues of large magnitude.  Endosulfan is a

6    popular pesticide that is used on a wide variety of agricultural crops.  Moreover, MANA

7    generates substantial revenue from endosulfan sales.  Thus, the outcome of this case has

8    potentially significant ramifications for the U.S. agricultural economy and for MANA.

9    Consequently, MANA should be allowed to participate in this case.

10    **IV.    CONCLUSION**

11    For the foregoing reasons, MANA respectfully requests that its Motion to Intervene be

12    granted.

13

14    DATED:   August 20, 2008                         HELLER EHRMAN LLP

15

16                                                      By:          */s/*
      David B. Weinberg (D.C. Bar # 186247)            Laurence A. Weiss
17    (Pending *pro hac vice*)                            Laurence.Weiss@hellerehrman.com
        dweinberg@wileyrein.com                        HELLER EHRMAN LLP
18    Eric Andreas (D.C. Bar # 462777)                 275 Middlefield Road
        eandreas@wileyrein.com                         Menlo Park, CA  94025-3506
19    David E. Markert (D.C. Bar #502486)              Telephone:   650.324.7000
        dmarkert@wileyrein.com                         Facsimile:   650.324.0638
20    WILEY REIN LLP
      1776 K Street NW
21    Washington, DC  20006
      Telephone:   202.719.7000
22    Facsimile:   202.719.7049

23                                   Attorneys for Intervenor-Defendant
                                   Makhteshim Agan of North America, Inc.
24

25

26

27

28    12889211.3

      MOTION TO INTERVENE AND SUPPORTING MEMORANDUM
      C 08-03542 VRW    - 12 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

PESTICIDE ACTION NETWORK
NORTH AMERICA, et al.,                    )
                                          )
                                          )   Case No. C 08-03542 VRW
                  Plaintiffs,             )
                                          )
            v.                            )   **[PROPOSED] ORDER**
                                          )
UNITED STATES ENVIRONMENTAL               )
PROTECTION AGENCY,                        )
                                          )
                  Defendant.              )
_____  )

     THIS MATTER having come before the Court upon the Motion of Makhteshim Agan of North America, Inc. to Intervene as Party Defendant ("Motion"), the Court having considered the parties' submissions related thereto, and it appearing that good cause exists for this order, now, therefore

     IT IS HEREBY ORDERED that the Motion is GRANTED and the clerk is directed to file the proposed Answer.

     DATED this _____ day of _____, 2008.


_____
VAUGHN R. WALKER
United States District Judge

[Proposed] Order Granting Makhteshim Agan of North America, Inc.'s Motion To Intervene