1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

PESTICIDE ACTION NETWORK
NORTH AMERICA, et al.,               )
                                     )
                                     )      Case No. C 08-03542 VRW
              Plaintiffs,            )
                                     )
              v.                     )      **DECLARATION OF EPHRAIM GUR**
                                     )
UNITED STATES ENVIRONMENTAL          )
PROTECTION AGENCY,                   )
                                     )
              Defendant.             )
                                     )

I, Ephraim Gur, declare as follows:

1.      I am employed by Makhteshim Agan of North America, Inc. ("MANA"), a

Delaware corporation, as Vice President of Regulatory and Scientific Affairs. MANA is an

affiliate of Makhteshim Chemical Works, Ltd. ("MCW"), an Israeli corporation. Pursuant to

40 C.F.R. § 152.50, MANA is authorized to act on MCW's behalf on all pesticide registration

matters before the United States Environmental Protection Agency ("EPA"). MANA also

coordinates the domestic distribution and sale of MCW's technical-grade endosulfan and itself

distributes endosulfan products throughout the United States.

2.      One of my roles at MANA involves coordination of MANA and MCW's

interactions with EPA with regard to pesticides containing the active ingredient endosulfan. I

have been working on regulatory issues related to endosulfan, including that chemical's

reregistration, since 1993. All statements in this declaration are based on my personal

knowledge.

3.      Endosulfan is a broad spectrum contact insecticide and acaricide that is used by

farmers in the United States to defend against a variety of insect and mite pests of field, fruit, and

vegetable crops. It was first registered for use in the United States in 1954. In 2000, the

endosulfan registrants agreed to voluntarily cancel their registrations for residential uses of

endosulfan-containing products, which constituted the majority of all registered uses. As a result,

GUR DECLARATION
C 08-03542 VRW    - 1 -

1    the annual domestic usage of endosulfan has dropped considerably in the last decade.

2       4.      MCW is the primary manufacturer of the technical-grade endosulfan that is used in

3    domestic pesticide products in the United States, and holds EPA registration no. 11678-5 for its

4    technical product. The United States Geological Service estimates that the domestic average

5    annual agricultural use of endosulfan from 1999 through 2004 was approximately 787 thousand

6    pounds. Crops which constitute the majority of endosulfan use in the United States include

7    cotton, tomatoes, potatoes, apples, pears, melons, squash, tobacco, and cucumbers.

8       5.      MANA holds the following registrations issued by EPA for technical-grade

9    endosulfan and for end-use products containing endosulfan:

| Registration No. | Product Name |
| --- | --- |
| 66222-62 | Thionex 50W Insecticide |
| 66222-63 | Thiodan 3 EC Insecticide |
| 66222-64 | Thionex Technical Insecticide |

6.      MCW holds the following registration issued by EPA for technical-grade endosulfan:

| Registration No. | Product Name |
| --- | --- |
| 11678-5 | Thionex Endosulfan Technical |

7.      Endosulfan's health and safety risks have been extensively examined and re-examined by numerous governmental regulatory bodies, including EPA. Millions of dollars have been spent in the past five decades on numerous studies of the potential impact of endosulfan-containing products on human health and the environment. In the past ten years, MANA and MCW have invested millions of dollars in research and testing to support EPA's determination of safety, and they continually update that research with data generated using the newest testing technologies.

8.    MANA operates an exceptional product stewardship program that supports and advises customers on application techniques that minimize risks to people or the environment from endosulfan.

9.    EPA completed a comprehensive review of endosulfan's safety in July 2002, at which time the Agency issued a Reregistration Eligibility Decision ("RED") for the chemical. In the RED, EPA determined that endosulfan was eligible for reregistration for agricultural uses.

10.    MANA and MCW were active participants in the reregistration process that culminated in the endosulfan RED and filed extensive comments and data in support of their registrations.

11.    EPA's participation in this lawsuit does not protect MANA and MCW's interests. In general, MANA finds itself in an adversarial relationship with EPA. EPA lacks the focused scientific and financial interests that MANA and MCW have in defending the endosulfan RED. Nor does the Agency have MANA and MCW's experience and knowledge in the complex business of supplying endosulfan products. Moreover, MANA and MCW routinely conduct extensive research on the pesticides they manufacture and thus have special expertise that makes them uniquely able to both defend endosulfan's safety and accurately delineate the pesticide's likely effects on human health and the environment. In short, MANA and MCW have different interests that could lead them to take different positions on certain issues from EPA, including the issue of whether settlement of this case without adjudication is appropriate.

12.    MANA and MCW generate significant revenue from the sale and distribution of endosulfan products, and by virtue of their defense activities and product stewardship program has developed a very favorable reputation among their customers and others in the agricultural business. If Plaintiffs prevail in this case, MANA and MCW's endosulfan sales are likely to be reduced (or even eliminated), and their customers are likely to view the companies negatively for failing to adequately defend their products.

13.    MANA and MCW will face substantial financial burdens if Plaintiffs obtain the re-review of the endosulfan RED that they seek. Uncertainty about the future availability of endosulfan products likely will lead some of MANA and MCW's endosulfan customers to switch

GUR DECLARATION
C 08-03542 VRW    - 3 -

1  to substitutes offered by other companies.  MANA and MCW also would be forced to incur

2  additional costs to defend endosulfan's safety.

3       14.    The value of MANA and MCW's registrations for endosulfan products would be

4  significantly reduced should Plaintiffs prevail.  If EPA imposes additional restrictions on the

5  distribution or use of endosulfan-containing products, or even a total ban on the sale of such

6  products, following a re-review of the July 2002 RED, much of MANA and MCW's investment

7  in the studies that enabled them to maintain their registrations would be rendered useless.

8  Moreover, if EPA were to reregister endosulfan on the condition that MANA and MCW conduct

9  more studies on the pesticide's safety, the cost of meeting such a condition may be so great that

10  the companies would have no choice but to cancel or narrow their registrations.

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

GUR DECLARATION
C 08-03542 VRW    - 4 -

1        I declare, under penalty of perjury pursuant to 18 U.S.C. § 1546, that the foregoing is true

2    and correct and that I executed this declaration on August 11, 2008 in Washington, D.C.

3

4    _____

5    Ephraim Gur

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GUR DECLARATION
C 08-03542 VRW    - 5 -